Argued July 13, decided July 30, 1912.

## WHITTON v. KNIGHT.

[125 Pac. 268.]

BOUNDARIES—SUFFICIENCY OF EVIDENCE.

Evidence, in an action to quiet title, *held* to sustain finding for plaintiff as to location of disputed boundary line.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Statement PER CURIAM.

This is a suit by Wilbur F. Whitton against Frank Knight and Lulu D. Knight, to quiet the title to 5.38 acres of land in Multnomah County and a right of way appurtenant thereto, described as follows:

"Beginning at a point eleven chains and forty-five and one-half links (11.45½) east of the southwest corner of the Ezro Johnson donation land claim in township one (1) south of range two (2) east of the Willamette Meridian, and running thence south twenty and one-half (20.50) chains to the south boundary of the Jacob Johnson donation land claim; thence east along the said south line of said Johnson's claim two (2) chains and sixty-two and one-half (62½) links; thence north twenty and one-half (20.50) chains; thence west two (2) chains and sixty-two and one-half (62½) links to the place of beginning, containing five and thirty-eight one-hundredths (5.38) acres, more or less. Also a perpetual right of way over and across the real property belonging to said defendants, described as follows: Commencing at a point on the south line of Jacob Johnson D. L. C. No. 53, township 1 S., R. 2 E., of the Willamette Meridian (where the said claim line intersects on the center line of the county road, which runs due north from the quarter section post on south side of section 23, said township and range), and from said starting point running north 20 and 50-100 chains to the north line of said Johnson claim; thence west 9 chains and 76 links to a point on north line; thence south 20 and 50-100 chains to a point on south line of said Johnson D. L. C.; thence east 9 chains and 76 links to the place of beginning, containing 20 acres more or less. Which said right of way is more

particularly described as follows:    Beginning at the northeast corner of said land owned by the said defendants, running thence west along the north line of the said Jacob Johnson donation land claim about 40 rods, to the land owned by this plaintiff, as above described, said right of way being 12 feet in width, and to be constructed and kept in repair by the plaintiff with the right on the part of the defendants to maintain gates at either end of said right of way, and being the same right of way referred to and particularly described in that certain deed therefor, from the said defendants to Frederick Hager and Godfrey Hager, dated the 11th day of March, 1908, and recorded on the 31st day of May, 1910, in Book 493, page 289, of records of deeds of said Multnomah County, State of Oregon, and is appurtenant to plaintiff's land first described."

Defendants deny plaintiff's title and set up title in themselves to the following described tract:

"Commencing at a point on the south line of the Jacob Johnson D. L. C. number fifty-three (53), township 1 south, range 2 east, of the Willamette Meridian (where the said claim line is intersected on the center line of a county road which runs due north from the quarter section post on the south line of section twenty-three [23], said township and range), and from said starting point running north 20.50 chains to the north line of said Johnson claim; thence west 9.76 chains; thence south 20.50 chains to a point on the south line of said Johnson D. L. C.; thence east 9.76 chains to the place of beginning, containing twenty (20) acres more or less, and also:    Beginning at the northeast corner of a tract of land sold by Wm. League and wife to F. P. Hunt and recorded in Book 248, page 445, of Deeds; thence south along east line of said tract to the southeast corner thereof; thence east to center of county road number 397; thence along center line of county road northerly to the place of beginning, containing one and one-half (1½) acres more or less."                      AFFIRMED.

For appellants there was a brief over the names of *Messrs. Jeffrey & Lenon*, with an oral argument by *Mr. Charles E. Lenon.*

For respondent there was a brief over the names of *Messrs. Johnson & VanZante* and *Mr. Albert H. Tanner,* with oral arguments by *Mr. Tanner* and *Mr. John Van Zante.*

Opinion PER CURIAM.

It is apparent that if defendants' contention that the beginning point of the survey of his tract is where a line, extending due north from the quarter section post on the south line of section 23, intersects the south line of the Jacob Johnson donation land claim be true, then plaintiff has no land whatever, and the deed tó him conveyed nothing. On the other hand, if the location of the line is according to plaintiff's contention, each party will have all the land he bought. The contention hinges upon the location of the initial corner of defendants' tract, which is described in their deed as a point on the south line of the Jacob Johnson D. L. C., where the line is intersected on the center line of a county road which runs due north from the quarter section post on the south line of section 23, township 1, range 2 east. There is no county road running due north from the quarter section post named. The only survey for a county road, crossing the south line of the donation land claim referred to, runs in a northwesterly direction from the quarter post above named, and then crosses a line drawn north from the quarter post, and runs in a southeasterly direction, crossing the south line of the Johnson claim about 5.8 chains east from the intersection of a line drawn north from the quarter post before mentioned.

It is claimed by defendant that the survey, as shown by the field notes, intersected the south line of the Johnson claim eight chains east of the point last mentioned. The testimony of Mr. Bonser, who made a survey for defendants several years before the hearing of this case, explains this apparent discrepancy by suggesting that a call for a course 60 degrees east is an error, and that the

course is, in fact, six degrees east. This seems to correspond more closely to monuments upon the ground, and is reconcilable with the assumption of common sense on the part of the locators, as a course 60 degrees east would disregard the topography of the county and run the road unnecessarily over rough ground and into a difficult canyon; while, accepting six degrees as the proper angle, it would place the road upon good ground and practically correspond with the road as actually traveled. The fact that there is no such road, either by survey or upon the ground, puts the matter at large, so far as this call in the description is concerned, and we are left to determine where the road referred to was actually located, as it seems certain that the call for a beginning point in the center of the road was predicated upon the presumption that the road as actually traveled was a located county road, and we shall take the center of that road as the beginning point of the survey of Knight's 20 acres.

We are satisfied that it is a point about 5.8 chains east from the point of intersection of a line prolonged due north from the quarter corner before referred to; and that the court below properly located this corner. This was recognized by the defendants as the true corner, and an iron post was set there by surveyors employed by them, until later they concluded that, by adhering to a construction of a conveyance which would place their corner due north of the quarter post on the south line of section 23, they would gain land which evidently they never bought. There was an attempt made to show that a county road was surveyed along this line; but there is no record of such survey, and the fact that it was made rests in the alleged parol declaration of a party now deceased. We are not satisfied that such a survey was ever made; and if it was made it is clear that it was never accepted.

The decree of the circuit court is affirmed, and its findings are adopted as the findings of this court.

AFFIRMED.